IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RAPHAEL THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-899 (RGA) |
| | ) | |
| TCT MOBILE, INC. and | ) | |
| TCT MOBILE (US) INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF
## THEIR MOTION TO DISMISS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

OF COUNSEL:

Christopher Kao
Brock S. Weber
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA  94111-5998
(415) 983-1159

*Attorneys for Defendants TCT Mobile, Inc.
and TCT Mobile (US) Inc.*

Cheng Chieh (Jack) Ko
PILLSBURY WINTHROP SHAW PITTMAN LLP
501 West Broadway, Suite 1100
San Diego, CA  92101

August 20, 2019

TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF THE PROCEEDINGS ..........................................................1

II.   INTRODUCTION AND SUMMARY OF ARGUMENTS .................................................1

III.  STATEMENT OF RELEVANT FACTS .............................................................................3

      A.    The Patents-in-Suit ......................................................................................................3

      B.    The Asserted Claims .....................................................................................................4

IV.   LEGAL STANDARDS ..........................................................................................................6

      A.    Motion To Dismiss For Failure To Satisfy 35 U.S.C. § 101 ...................................6

      B.    Patent-Eligible Subject Matter Under 35 U.S.C. § 101 ...........................................7

V.    ARGUMENT ...........................................................................................................................9

      A.    The Asserted Claims Are Invalid Under Section 101 As A Matter Of Law. ..........9

            1.    The Asserted Claims Are Directed To The Abstract Idea Of Screening
                  Communications. .................................................................................................9

                  a.    The Asserted Claims Merely Recite The Longstanding Human
                        Activity Of Screening Communications, Which Courts Have
                        Found To Be Abstract. ...................................................................9

                  b.    The Asserted Claims Are Directed To A Functional Result,
                        Not An Improvement To Computer Functionality. ......................13

            2.    The Asserted Claims Also Lack An Inventive Concept Under *Alice*
                  Step Two. ..........................................................................................................15

            3.    No Questions Of Fact Preclude Dismissal Under Section 101 .................17

VI.   CONCLUSION ......................................................................................................................20

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)................................................................6, 18, 19

*Alice Corp. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014)................................................................ *passim*

*Align Tech., Inc. v. 3Shape A/S*,
  339 F. Supp. 3d 435 (D. Del. 2018).........................................................7

*Ass'n of Molecular Pathology v. Myriad Genetics, Inc.*,
  133 S. Ct. 2107 (2013).............................................................................7

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016).................................................................8

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018).................................................6, 7, 17, 18

*Bilski v. Kappos*,
  561 U.S. 593 (2010)..................................................................................6

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019)...................................................6, 13, 19

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)...............................................6, 15, 16

*Credit Acceptance Corp. v. Westlake Servs.*,
  859 F.3d 1044 (Fed. Cir. 2016)...............................................................12

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011).................................................................7

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016).........................................................7, 15, 16

*Immersion Corp. v. Fitbit, Inc.*
  313 F. Supp. 3d 1005 (N.D. Cal. 2018).................................................17

*In re TLI Commc'ns LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016).............................................................14, 15

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
  850 F.3d 1315 (Fed. Cir. 2017).......................................................................................8

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016)................................................................................ *passim*

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015)...............................................................................6, 13, 14

*IPA Technologies, Inc. v. Amazon.com, Inc.*,
  352 F. Supp. 3d 335 (D. Del. 2019).............................................................................19

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016).....................................................................................13

*Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.*,
  811 F.3d 1314 (Fed. Cir. 2016).....................................................................................16

*OIP Tech. Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015).......................................................................................7

*Pragmatus Telecom LLC, v. Genesys Telecommunications Labs., Inc.*,
  114 F. Supp. 3d 192 (D. Del. 2015)...............................................................................13

*RingCentral, Inc. v. Dialpad, Inc.*,
  372 F. Supp. 3d 988 (N.D. Cal. 2019) ...................................................................... *passim*

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*,
  873 F.3d 1364 (Fed. Cir. 2017).....................................................................................16

*TriPlay, Inc. v. WhatsApp Inc.*,
  C.A. No. 13-1703-LPS-CJB, 2018 WL 3545500 (D. Del. Jul. 24, 2018) .............................19

*Twilio, Inc. v. Telesign Corp.*,
  249 F. Supp. 3d 1123 (N.D. Cal. 2017) ....................................................................2, 11, 13

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017)...................................................................................8, 13

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014).........................................................................................8

*Voter Verified, Inc. v. Election Systems & Software LLC*,
  887 F.3d 1376 (Fed. Cir. 2018).......................................................................................9

*WhitServe LLC v. Donuts, Inc.*,
  C.A. Nos. 18-193-CFC, 18-194-CFC, 2019 WL 2929759
   (D. Del. Jul. 8, 2019)................................................................................................ *passim*

**Rules and Statutes**

35 U.S.C. § 101 ................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6) .................................................................................... *passim*

Fed. R. Civ. P. 8(a)(2) ............................................................................................ 20

## I.    NATURE AND STAGE OF THE PROCEEDING

Defendants TCT Mobile, Inc. and TCT Mobile (US) Inc. (together, "TCT Mobile") respectfully bring this Motion to Dismiss Plaintiff's First Amended Complaint ("Complaint") for infringement of U.S. Patent Nos. 8,868,053 (the "'053 Patent") and 9,473,629 (the "'629 Patent") (together, the "Patents-in-Suit"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, because the asserted claims of the Patents-in-Suit are invalid for reciting unpatentable abstract ideas under 35 U.S.C. § 101.

## II.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff's Complaint should be dismissed because the asserted claims of the Patents-in-Suit are invalid for reciting ineligible subject matter under 35 U.S.C. § 101.  The Patents-in-Suit, which are related and share the same specification, attempt to claim the basic and abstract concept of screening incoming communications, which has been performed by humans for years. For example, receptionists and administrative assistants have long screened incoming telephone calls and permitted only pre-approved callers to be connected.  And individuals, of course, have likewise long screened calls on their own by using caller ID to accept only certain calls at certain times.  Asserted Claim 1 of the '053 Patent and asserted Claim 11 of the '629 Patent recite nothing more than this same abstract idea implemented on a "mobile device."[1]  Specifically, the patents describe a "night-time" mode (similar to a "call screening mode") for mobile phones that

---

[1]     The Complaint alleges that Defendants infringe "at least" Claim 1 of the '053 Patent and Claim 11 of the '629 Patent, but fails to identify or provide analysis of any other claim purportedly infringed by Defendants.  (Complaint at ¶¶43, 54).  Claim 1 of the '053 Patent and Claim 11 of the '629 Patent are nonetheless representative of the remaining claims of the Patents-in-Suit for purposes of the analysis under Section 101 set forth herein.

can be set to filter all incoming communications except for those from certain known contacts. ('053 Patent, Ex. A to Complaint, at Abstract.)[2]

This fundamental idea of screening communications, however, is basic human activity that—without more—cannot be patented.  Indeed, the Federal Circuit has held that screening e-mail messages based on certain characteristics of those messages is an unpatentable abstract idea that covers the "long-prevalent practice for people" to "screen[]" messages.  *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313-19 (Fed. Cir. 2016) (affirming judgment from District of Delaware that asserted claims directed to "filtering e-mails" and "screening e-mails" were invalid under Section 101.  And a court in this District has also recently found patent claims directed to sending communications based on a "date field" to be fatally abstract under Section 101.  *See WhitServe LLC v. Donuts, Inc.*, C.A. Nos. 18-193-CFC, 18-194-CFC, 2019 WL 2929759, at *4-6 (D. Del. Jul. 8, 2019) (granting motion to dismiss).

That the asserted claims here principally concern "voice calls" instead of e-mail messages makes them even more abstract than those invalidated in *Symantec*, as voice calls existed long before the advent of computers.  Indeed, particularly relevant here, other district courts have recently found that claims directed to screening calls are unpatentably abstract under Section 101.  *See, e.g.*, *RingCentral, Inc. v. Dialpad, Inc.*, 372 F. Supp. 3d 988, 999-1000 (N.D. Cal. 2019) (granting motion to dismiss because "the Court concludes that the claim is directed to the abstract ideas of routing telephone calls based on routing parameters, such as time of day, and allowing a user to modify those routing parameters," as "these are functions that humans have routinely performed and are therefore abstract."); *Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1147 (N.D. Cal. 2017) ("[S]electing the best [telephony] message routing option based on

---

[2]  Because the Patents-in-Suit share a specification, all citations herein are to the '053 Patent unless otherwise noted.

2

separately-transmitted feedback is a fundamental human activity, applied to a specific technical environment," and is "an abstract idea.").

The asserted claims in this case are not directed to anything more than this same unpatentable abstract idea—*i.e.*, there is no inventive concept.  The asserted claims of the Patents-in-Suit do not recite technical details regarding **how** calls are normally routed, **how** calls are filtered, or **how** screening parameters are changed or implemented.  Instead, the asserted claims merely recite implementing these abstract activities on conventional computer components; namely, on a "mobile device" with a "user interface."  (Claim 1 of the '052 Patent; Claim 11 of the '629 Patent.)  However, implementing call screening on a "mobile device" with "user interfaces . . . is not inventive."  *RingCentral*, 372 F. Supp. 3d at 1000.

Because abstract ideas cannot be patented—and that is all that the Patents-in-Suit are directed to—the asserted claims are facially invalid under 35 U.S.C. § 101 as a matter of law. The Complaint should therefore be dismissed with prejudice.

## III.    STATEMENT OF RELEVANT FACTS

### A.    The Patents-in-Suit

The Patents-in-Suit share a sparse specification with one figure and less than four columns of written description.  (*See* '053 Patent, Ex. A to Complaint; '629 Patent, Ex. B to Complaint.)  Both patents claim priority to a provisional application filed on April 20, 2007.

By this time, sending and receiving text messages, video messages, or voice calls on mobile devices was well-known and conventional, as acknowledged in the Patents-in-Suit.  The patents explain in their "Background of the Invention" section that "cell phones of today are small and light-in [sic] weight" with various "features, including text messaging, internal cameras providing the ability to send and receive pictures and video, [and] web browsing." ('053 Patent at 1:19-28.)   Conventional cell phones also had "accurate date and time

information." (*Id*. at 29-30.)  The apparent problem, according to the patents, was that "cell phones do not differ in day and night operation," as "[p]hones at night can receive text messages, pictures, wrong number calls, solicitation calls, or calls from inconsiderate friends who have lost track of time." (*Id*. at 1:34-37.)

The purported solution to this problem according to the Patents-in-Suit is simply "a method for a selectable Nighttime Mode that would stop notification of all incoming calls and messages, with the exception of those from a contact that have been predetermined as important (or Nighttime Mode exempt)." (*Id*. at 1:45-49.)  The patents describe doing this with "a method for a Nighttime Mode for cellular phones" that allows a user to "customiz[e]" the "pre-determined important contacts to be exempt from Nighttime Mode." (*Id*. at 1:55-64 (Summary of the Invention).)  This can simply involve a user selecting phone numbers from the user's existing "address book to be Nighttime mode exempt." (*Id*. at 3:26-34.)  "During the Nighttime Mode, the phone will operate normally only for those selected Nighttime Mode exempt phone numbers" and "for all other callers, the phone remains silent." (*Id*. at 1:64-2:7)  The patents explain that, as an example, "if the message is a voice call then the action of filtering the message (i.e., if the exempt message characteristic is absent) may include instantly sending the message to voice mail." (*Id*. at 2:50-53.)

Other than describing the basic idea of screening communications during nighttime hours, the Patents-in-Suit do not provide ***any*** technical implementation details, whatsoever, in the less-than-two columns of detailed written description.

## B.    The Asserted Claims

Like the specification, asserted Claim 1 of the '053 Patent and asserted Claim 11 of the '629 Patent do not recite any technical implementation details regarding screening incoming communications to inhibit notification of a call unless it is from a pre-approved contact.  Instead,

4

the asserted claims merely recite this filtering functionality using generic components, such as a "mobile device" with a "user interface."  Asserted Claim 1 of the '052 Patent recites this as a method, as shown below:

1. A method implemented within a **mobile device** for inhibiting the message notification of a particular message received at the mobile device, the method comprising the steps of:

receiving at least one exempt message characteristic, the at least one exempt message characteristic comprising information that identifies one or more telephone numbers as exempt message characteristics, the exempt message characteristics being received at the **user interface of the mobile device** wherein the mobile device includes the storage of a plurality of telephone numbers and the step of receiving information further comprises receiving a selection of one or more telephone numbers from the plurality of telephone numbers already stored within the mobile device;

enabling a message reception notification inhibitor in response to detecting certain user actuations at the user interface, the message reception notification inhibitor being implemented entirely within the mobile device, to be active such that message notifications for any messages received at the mobile device are by default inhibited;

while the message reception notification inhibitor is enabled:

receiving messages at the mobile device, the messages being directed to the mobile device and at least one such message comprising a voice call; and

the mobile device examining the received message to determine if the received message includes the exempt message characteristic;

the mobile device bypassing the message reception notification inhibitor and applying normal processing of the received message only if the exempt message characteristic is identified in the received message; and

as a default, inhibiting the message reception notification for the received message if the exempt message characteristic is absent and the message is a voice call and sending the voice call to voice mail; and

disabling the message reception notification inhibitor, implemented entirely within the mobile device such that normal processing of the received message is applied to all messages.

Asserted Claim 11 of the '629 Patent recites this same functionality applied to "communications" in a "mobile device" using a generic "module" and "user interface," as shown below:

11. A **mobile device** for processing received communications in one of a plurality of modes, the mobile device comprising:

**a module**, operating entirely within the mobile device, configured to enable a first mode of operation that, in response to receiving a communication initiation at the

mobile device, operates by applying normal processing of the communication initiation such that the mobile device provides a user-indicator of such communication initiation reception and, configured to enable a second mode of operation that, in response to receiving a communication initiation at the mobile device, operates such that the mobile device as a default, inhibits the provision of the user-indicator for the communication initiation unless the communication initiation includes at least one user selectable exempt characteristic;

**a user interface** for detecting user interactions and based on the user interactions, interacting with the mobile device to selectively enable operation of the mobile device in the first mode in response to first user interactions and second mode of operation in response to second user interactions and to enable the selection of exempt characteristics, wherein the exempt characteristics comprise the identification of a potential communication originator and is selected from a plurality of originator identifications stored within the mobile device.

## IV.   LEGAL STANDARDS

### A.   Motion To Dismiss For Failure To Satisfy 35 U.S.C. § 101

Patent eligibility under 35 U.S.C. § 101 is a "threshold test" that should be answered early in a case. *See Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Whether a claim recites patent-eligible matter under Section 101 is a question of law, which may involve underlying facts. *See Berkheimer v. HP Inc*., 881 F.3d 1360, 1368 (Fed. Cir. 2018); *Aatrix Software, Inc. v. Green Shades Software, Inc*., 882 F.3d 1121, 1125 (Fed. Cir. 2018).

However, when patent claims on their face are plainly directed to an abstract idea, it is proper to make a determination of patent validity under Section 101 at the pleading stage, without the need for claim construction, and the Federal Circuit has upheld such decisions. *See, e.g., ChargePoint, Inc. v. SemaConnect, Inc*., 920 F.3d 759, 773-75 (Fed. Cir. 2019) (affirming dismissal under Rule 12(b)(6) of patent claims concerning remotely controlling charging stations over a network); *Internet Patents Corp. v. Active Network, Inc*., 790 F.3d 1343, 1348–49 (Fed. Cir. 2015) (affirming dismissal under Section 101 where claims directed to abstract idea of "retaining information in the navigation of online forms"); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (affirming dismissal

where claims merely recited use of generic scanner and computer technology to "perform well-understood, routine, and conventional activities commonly used in industry"); *OIP Tech. Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362–63 (Fed. Cir. 2015) (affirming dismissal where claims directed to abstract idea of offer-based price optimization involving "fundamental economic concepts" and merely "requiring conventional computer activities or routine data-gathering steps").  Indeed, courts in this District continue to routinely dismiss patent-ineligible claims on the pleadings.  *See, e.g.*, *WhitServe*, 2019 WL 2929759, Slip Op. at \*4-6; *Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 453–56 (D. Del. 2018).

Only well-pled factual allegations in the complaint of an inventive concept could possibly foreclose a Rule 12(b)(6) motion, and then, only if the alleged inventive concept is actually embodied in the asserted patent claims.  *See Berkheimer*, 881 F.3d at 1368-69 (holding that "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry" and only "improvements in the specification, *to the extent . . . captured in the claims*, create a factual dispute") (emphasis added in original).

### B.    Patent-Eligible Subject Matter Under 35 U.S.C. § 101

Abstract ideas "are not patentable" under Section 101.  *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Ass'n of Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)).  The Supreme Court's *Alice* decision sets forth a two-step test to determine whether a patent is invalid for claiming abstract ideas.  *See id.* at 2355.

At *Alice* step one, a court determines whether a claim's character as a whole is directed to an abstract idea.  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).  Courts have considered several factors when determining if claims are directed to an abstract idea, such as: whether the claims could be performed by a person, *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011); whether the claims cover a longstanding

7

fundamental practice implemented on a computer, *Symantec Corp.*, 838 F.3d at 1317-18; and whether the claims are purely functional in nature rather than containing specificity sufficient to recite how a claimed function is achieved, *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337-38 (Fed. Cir. 2017).

If the claims are directed to an abstract idea, then the Court must proceed to *Alice* step two to determine whether the claims include an "inventive concept" that is "significantly more" than the abstract idea, "sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357.  To avoid invalidation under this second step, the claims "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (citations and internal quotation marks omitted); *see also Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1331 (Fed. Cir. 2017) (requiring claims do more than "simply recite[] that the abstract idea will be implemented using the conventional components and functions generic to" a given technological environment).  As such, the asserted patent claims must "describe[] how their particular arrangement of elements is a technical improvement over prior art ways of" accomplishing the abstract ideas identified in step one of the *Alice* framework. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (emphasis added).

Accordingly, simply using generic technology does not save a claim under step two of the *Alice* inquiry, even if that technology is embodied in a tangible form.  For example, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2357-58.

8

## V.     ARGUMENT

### A.     The Asserted Claims Are Invalid Under Section 101 As A Matter Of Law.

The two asserted claims of the Patents-in-Suit are invalid under Section 101, as a matter

of law, because they are entirely directed to screening communications, which is a "long-

prevalent practice for people," *Symantec Corp.*, 838 F.3d at 1314.  In other words, "these are

functions that humans have routinely performed and are therefore abstract," *RingCentral,* 372

F. Supp. 3d at 999.  The asserted claims merely recite performing this basic human activity on

mobile devices, which, as admitted in the Patents-in-Suit, were routine and conventional at the

time the patents were filed.  Accordingly, the asserted patent claims lack additional, non-routine,

and unconventional elements that "transform the nature of the claim into a patent-eligible

application."  *Alice*, 134 S. Ct. at 2355 (quotation omitted); *see also Symantec*, 838 F.3d at 1315-

19; *RingCentral*, 372 F. Supp. 3d at 999-1000.

### 1.     The Asserted Claims Are Directed To The Abstract Idea Of Screening Communications.

The asserted claims of the Patents-in-Suit are directed to the abstract idea of ***screening***

***communications***.  The asserted claims are unpatentably abstract because they claim a generic

computer implementation of longstanding, fundamental human activity that courts have found to

be abstract, and because they recite results-based functional language as opposed to specific

improvements to communication technologies.

#### a.     The Asserted Claims Merely Recite The Longstanding Human Activity Of Screening Communications, Which Courts Have Found To Be Abstract.

Courts have consistently held that claims drawn to longstanding human activity are

directed to abstract ideas.  *See Alice*, 573 U.S. at 219 (intermediated settlement is an abstract idea

because it is a long prevalent, fundamental practice); *Voter Verified, Inc. v. Election Systems &*

*Software LLC*, 887 F.3d 1376, 1385 (Fed. Cir. 2018) (affirming grant of motion to dismiss under Section 101 for a patent concerning a voting system because "[h]umans have performed this fundamental activity . . . for hundreds of years."); *Symantec*, 838 F.3d at 1314 & n.5 (collecting fundamental activities considered abstract ideas in Supreme Court and Federal Circuit cases).

Here, the asserted claims of the Patents-in-Suit are directed to the fundamental human activity of screening communications. This is basic human activity that has been performed for ages. For instance, receptionists and assistants have long screened incoming calls for other employees. In the case of an assistant to a CEO, for example, the assistant could have been told by the CEO that during the next two hours all calls should be sent directly to her voicemail, unless they are coming from her family (*i.e.*, "inhibited," "filtered" or "Nighttime mode" processing in the language of the asserted patents). Of course, the CEO can revise and update her instructions to the assistant, such as by changing the time parameters or the important contacts that can always reach the CEO ("exempt message characteristics being received at the user interface" in the language of the '053 Patent and "selection of exempt characteristics" via a "user interface" in the language of the '629 Patent).

The Federal Circuit's analysis in *Symantec* is instructive and controlling. *See Symantec*, 838 F.3d at 1316–18. There, in considering a patent that routed emails according to certain predefined rules, the court analogized the claims to a "corporate mailroom." *See id*. at 1317. This common-sense analogy applies equally to the two asserted claims of the Patents-in-Suit. Just as "mailrooms receive correspondence, keep business rules defining actions to be taken regarding correspondence based on attributes of the correspondence, apply those business rules to correspondence, and take certain actions based on the application of business rules," such as "gating the message for further review [] and also releasing, deleting, returning, or forwarding the message," *id*.; so too, the asserted claims here simply recite: (1) receiving an incoming call or

communication, (2) establishing call-screening rules, (3) applying those rules to incoming calls, and (4) allowing or inhibiting incoming calls accordingly.   The fact that the Patents-in-Suit involve incoming phone calls or other communications on a mobile phone rather than emails makes no difference.

Indeed, the court in *RingCentral* recently invalidated very similar patent claims directed to screening telephone calls on a Rule 12(b)(6) motion.   *See RingCentral,* 372 F. Supp. 3d at 999-1000.   One of the invalidated claims in that case recited a method for screening phone calls with "configuration parameters [that] include a plurality of sets of call handling rules for handling incoming calls," that are "associated with calls made during different respective periods of time," and wherein "a user interface . . . receiv[es] a user command to update at least one configuration parameter."   *Id*. at 999 (quoting Claim 1 of U.S. Patent No. 8,355,496).   The Court found that such a "claim is directed to the abstract ideas of routing telephone calls based on routing parameters, such as time of day, and allowing a user to modify those routing parameters."   *Id*.   Because "these are functions that humans have routinely performed," this subject matter is "therefore abstract."   *Id*.  (citing *Symantec*, 838 F.3d at 1316-18; *Twilio*, 249 F. Supp. 3d at 1147).   The court analogized this call-filtering functionality to the long-prevalent practice of an assistant directing calls in one way during certain hours and in another way during other hours.   *Id*.   As in the *RingCentral* case, the fact that the asserted claims here include a "user interface" to update the screening characteristics does not save the claims because that is "nothing more than an automated way of an executive calling his or her assistant to make those changes."   *Id*.

Courts in this District have also found similar technology to be unpatentable under Section 101.   For example, in the recent *WhitServe* decision, Judge Connolly invalidated on a motion to dismiss patent claims that recited a device for "automatically generating a client

11

response form" and sending it over a "communication link" based on a "value" in a "date field." *WhitServe,* 2019 WL 2929759, at *1-2. The court found that these claims were directed to the unpatentable abstract idea of "preparing, sending, and receiving responses" based on "due-date reminders." *Id*. at *4. In other words, the claims merely concerned the generation and routing of communications based on time parameters, similar to the asserted claims here. *See id*. But this fails step one of the *Alice* test because "claims reciting automation of a conventional business practice using generic computer technology are directed to an abstract idea." *Id*. at *5 (citing Federal Circuit precedent).

In addition, the court in *WhitServe* found that the claims at issue were "not directed to an improvement in computer functionality," and were therefore abstract, because the "problem facing the inventor" was the "mere automation of manual processes using generic computers[.]" *Id*. at *6 (citing *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2016)). As explained above, the Patents-in-Suit here similarly simply describe the problem that known and conventional mobile devices purportedly did not operate differently during the day and night, such that a "Nighttime Mode" was needed to screen communications except from pre-approved contacts. ('053 Patent at 1:34-49.) Again, this is just the automation of an age-old human or business activity, such as a receptionist or assistant performing the same functions in the real-world. This is not patentable and is abstract under *Alice* step one. *WhitServe*, 2019 WL 2929759, at *6.

Thus, the asserted claims of the Patents-in-Suit simply attempt to claim the fundamental human and business activity of screening calls or other messages, implemented on a generic mobile device. Because this is insufficient to confer patentability on a fundamental practice routinely performed in the physical world, the asserted claims are clearly directed to an abstract idea and fail the first step in the *Alice* test. *Alice*, 573 U.S. at 219; *Symantec*, 838 F.3d at 1316–

18; *RingCentral*, 372 F. Supp. 3d at 999-1000; *WhitServe*, 2019 WL 2929759, at *4-6;

*Pragmatus Telecom LLC, v. Genesys Telecommunications Labs., Inc.*, 114 F. Supp. 3d 192,

196-200 (D. Del. 2015); *Twilio*, 249 F. Supp. 3d at 1147.

> b. The Asserted Claims Are Directed To A Functional Result, Not An <u>Improvement To Computer Functionality.</u>

The asserted claims also do not improve any specific computer functionality.  Although

the claims recite the use of generic components, they are only directed to the functional result of

screening communications.  The recited "mobile device" with a "user interface" and generic

"module" are merely tools to carry out the described function.  Claims written in result-based

functional language, reciting no particular way of performing a function, are patent-ineligible.

*See ChargePoint,* 920 F.3d at 769-770*; Two-Way Media*, 874 F.3d at 1337-38; *McRO, Inc. v.*

*Bandai Namco Games Am. Inc*., 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("We therefore look to

whether the claims in these patents focus on a specific means or method that improves the

relevant technology or are instead directed to a result or effect that itself is the abstract idea and

merely invoke generic processes and machinery.").

The limitations in the asserted claims lack any specialized technology or specificity

regarding how to carry out the recited generic functions.  In particular, ***neither the specification***

***nor the asserted claims*** of the Patents-in-Suit disclose any technical details regarding: (1) ***how***

mobile devices function; (2) ***how*** internal clocks in the phone are programmed; (3) ***how*** a user

interface is implemented; (4) ***how*** characteristics of an incoming call, such as the time of the call

and the telephone number of the caller, are identitied; (5) ***how*** those charateristics are

maintained, updated, or used to screen the calls; or (6) ***how*** any filtering is actually performed.

The asserted claims fail to recite any specific "processing" techniques at all.  *See Internet*

*Patents*, 790 F.3d at 1348 (where a claim "contains no restrictions on how the result is

accomplished," but rather is directed to the abstract idea itself, the claim is not directed to patent-eligible subject matter).

Rather than specifying an improvement to computer technology, the asserted patent claims recite generic technology such as a "mobile device" with a "user interface." Stating that routine message-screening can be implemented on these generic components is not enough to save the asserted claims from unpatentable abstractness. *Internet Patents*, 790 F.3d at 1348; *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) ("The specification does not describe a new telephone, a new server, or a new physical combination of the two [and] the specification fails to provide any technical details for the tangible components, but instead predominately describes the system and methods in purely functional terms.").

As in *RingCentral*, screening phone calls on a "mobile device" using an "user interface" is "not directed to any specific asserted improvement in computer capabilities, nor is it necessarily rooted in computer technology." *RingCentral*, 372 F. Supp. 3d. at 999-1000. Similarly, the court in *WhitServe* found that sending communications based on a time-value is abstract because it does not improve computer technology, as the "problem facing the inventor" constituted the "mere automation of manual processes." *WhitServe*, 2019 WL 2929759, at *6. As discussed above, the Patents-in-Suit admit that the problem facing the inventor was simply to add nighttime screening to conventional mobile phone communications, which is just the automation of the manual process of call-screening. *See id.*

Therefore, the asserted patent claims are directed to an abstract idea under the first step of *Alice* for this reason as well.

### 2.   The Asserted Claims Also Lack An Inventive Concept Under *Alice* Step Two.

Because the asserted claims are directed to the abstract idea of screening communications, the claims are invalid unless they embody an "inventive concept" that is "significantly more" than the abstract idea under *Alice* step two. *Alice*, 573 U.S. at 217-18.  That is not the case here.  The recited limitations do not amount to significantly more than the abstract idea itself.  The claimed components are well-known, routine, and conventional—as admitted in the Patents-in-Suit themselves—which cannot supply an inventive concept.

In the context of computer-implemented inventions, the Federal Circuit has made clear that "for the role of the computer to be deemed meaningful in the context of [*Alice* step two] analysis, it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'"  *Content Extraction*, 776 F.3d at 1347-48 (quoting *Alice*, 573 U.S. at 225).  For example, the Federal Circuit rejected the claims in *Electric Power Group* at step two because "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information."  *Electric Power Group*, 830 F.3d at 1355.  The Federal Circuit rejected the invocation of "computers and networks that are not even arguably inventive" as insufficient to provide an inventive concept. *Id*.  Further, it "is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." *TLI Commc'ns*, 823 F.3d at 613.

The elements of asserted Claim 1 of the '053 Patent and Claim 11 of the '629 Patent pertain to purely conventional components—a mobile device with a user interface.  The Patents-in-Suit admit as much.  In particular, the patents acknowledge that "cell phones" were known

15

before the patents were filed and that it was conventional at the time to "receive text messages, pictures, wrong number calls, solicitation calls, or calls from inconsiderate friends." ('053 Patent at 1:34-37.)  The patents also acknowledge that conventional cell phones already had "accurate date and time information" stored on them and that users could select a "contact" from contact lists on the phone.  (*Id*. at 1:29-33, 1:45-49, Claim 1 (reciting the selection of "telephone numbers already stored within the mobile device").)  The asserted claims recite nothing more than implementing the underlying abstract idea of screening calls on such a generic mobile device with a user interface to select pre-approved contacts not to block or screen.  As in *Symantec*, based on admissions of what was known and conventional in the art, the "specification [here] thus confirms that the implementation of the abstract idea is routine and conventional," and therefore fails step two of the *Alice* test.  838 F.3d at 1318.

After all, courts have repeatedly held that simply claiming an abstract idea applied in a conventional computer environment is insufficient under step two of the *Alice* test.  *See, e.g.*, *Content Extraction*, 776 F.3d at 1347-48; *Electric Power Group*, 830 F.3d at 1355 (holding that the "claims' invocation of computers, networks, and displays does not transform the claimed subject matter into patent-eligible applications").  In fact, the court in *RingCentral* specifically found that implementing call screening on a "***mobile device***" with "***user interfaces***" is "***not inventive***" under step two of the *Alice* test.  *RingCentral*, 372 F. Supp. 3d. at 1000 (emphasis added).  And the Federal Circuit has held that reciting a "user interface" to configure call-screening parameters constitutes nothing more than the recitation of a "generic computer component[]."  *See Mortg. Grader, Inc. v. First Choice Loan Servs., Inc*., 811 F.3d 1314, 1324–25 (Fed. Cir. 2016); *see also Smart Sys. Innovations, LLC v. Chi. Transit Auth*., 873 F.3d 1364, 1373–74 (Fed. Cir. 2017) (concluding that recitation of an interface did not satisfy step two of *Alice*).

Further, the Federal Circuit in *Symantec* found that e-mail message screening was not inventive under step two of *Alice* because the claims do not describe "how [a] particular arrangement of elements is a technical improvement over prior art ways of filtering" the messages. *Symantec,* 838 F.3d at 1316. As explained above, the Patents-in-Suit also do not disclose in the specification or in the asserted claims any technical details, at all, regarding ***how*** any of the claimed call-screening functionality is actually implemented. This confirms the lack of inventiveness in the asserted claims. *See id.*

In sum, the asserted claims simply use generic computer components arranged in a conventional fashion. Thus, the asserted claims lack an inventive concept at *Alice* step two and are invalid under Section 101.

### 3.       No Questions Of Fact Preclude Dismissal Under Section 101.

Section 101 motions are frequently, and correctly, decided as matter of law. *See, e.g.*, *Immersion Corp. v. Fitbit, Inc.* 313 F. Supp. 3d 1005, 1031 (N.D. Cal. 2018). However, Plaintiff attempts to manufacture a factual dispute in the Complaint regarding the inventiveness of the Patents-in-Suit to survive a possible Section 101 challenge. (*See* Complaint at ¶¶24-32.) But no matter what "facts" the Complaint alleges, it cannot amend the patents. The Patents-in-Suit do not describe any actual technical improvements or details or anything that is unconventional, whatsoever, in the less-than-two columns of detailed written description or in the claims themselves, as shown above.

Although the Section 101 inquiry may occasionally involve "underlying issues of fact," *Berkheimer*, 881 F.3d at 1365, a plaintiff may not manufacture a factual dispute simply by pleading that the "the claim limitations involve more than performance of well-understood, routine, and conventional activities previously known to the industry," *id*. at 1367 (internal quotation marks and brackets omitted), which is all that the Complaint does here (*see* ¶24).

17

Under *Berkheimer*, a factual dispute about inventiveness may exist only where there are improvements detailed in the **specification** and **captured by the claims**. *See Berkheimer*, 881 F.3d at 1369. The patent at issue in *Berkheimer* illustrates this principle: there, the specification described a data storage method that "eliminate[d] redundancies, improve[d] system efficiency, reduce[d] storage requirements, and enable[d] a single edit to a stored object to propagate throughout all documents linked to that object." *Id.* The Federal Circuit concluded that a subset of asserted claims failed to recite "any of the purportedly unconventional activities disclosed in the specification" and were therefore ineligible under Section 101. But the court did find a factual dispute as to eligibility for certain claims that "contain[ed] **limitations directed to the arguably unconventional inventive concept described in the specification**." *Id.* at 1370 (emphasis added). In *Aatrix Software, Inc. v. Green Shades Software, Inc*., the Federal Circuit similarly held that factual allegations on inventiveness may preclude dismissal at the pleadings stage on eligibility grounds, but not when something "on the record refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6)." 882 F.3d 1121, 1125 (Fed. Cir. 2018) (brackets and ellipses omitted).

Here, the Complaint includes the bare conclusion that the "claims of the Patents-in-Suit encompass novel and non-obvious technology that was neither well-understood, routine nor conventional to a skilled artisan at the time of the invention." (Complaint at ¶24.) This legal conclusion couched as a factual assertion is contrary to the admissions in the specification that mobile communications were conventional at the time of the patents and the fact that the asserted claims do not recite any technical improvements at all. The specification does not describe any unconventional technology. Thus, the inconsistent allegation in the Complaint cannot prevent dismissal with prejudice under *Berkheimer* or *Aatrix*.

Further, the Complaint attempts to allege that the purportedly "novel technology includes, but is not limited to, the enabling/disabling of a message reception notification inhibitor, the use of an exempt message characteristic, the capability to circumvent default operations of a mobile device, and the combination thereof." (Complaint at ¶24.) In other words, the Patents-in-Suit allegedly recognized the need to "provid[e] methods and systems to selectively filter communications, particularly during nighttime." (*Id*. at ¶27.) However, all of these asserted improvements simply go to the idea of screening calls during certain times, unless they come from an allowed phone number. "But [screening calls] *is the abstract idea itself*, and a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention significantly more than that ineligible concept." *ChargePoint*, 920 F.3d at 774 (affirming dismissal under Rule 12(b)(6) on Section 101 grounds because it was "clear," based on the patent claims and the specification, that "the only possible inventive concept" was the abstract idea to which the patent claims were directed— notwithstanding allegations to the contrary in the complaint) (emphasis added).

Courts in this District considering challenges under Section 101 post-*Berkheimer* and *Aatrix* have likewise rejected attempts by plaintiffs to allege facts regarding inventiveness where such allegations are not supported by (or are inconsistent with) the language of the patents themselves. *E.g.*, *IPA Technologies, Inc. v. Amazon.com, Inc*., 352 F. Supp. 3d 335, 350 (D. Del. 2019); *TriPlay, Inc. v. WhatsApp Inc*., C.A. No. 13-1703-LPS-CJB, 2018 WL 3545500, at *1–2 (D. Del. Jul. 24, 2018).

Plaintiff's allegations of inventiveness, even if taken as true, fail as a matter of law for the same reasons: the asserted patents simply do not support them.

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice, pursuant to Rules 12(b)(6) and 8(a)(2) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

OF COUNSEL:

Christopher Kao
Brock S. Weber
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA  94111-5998
(415) 983-1159

*Attorneys for Defendants TCT Mobile, Inc.*
*and TCT Mobile (US) Inc.*

Cheng Chieh (Jack) Ko
PILLSBURY WINTHROP SHAW PITTMAN LLP
501 West Broadway, Suite 1100
San Diego, CA  92101

August 20, 2019

20

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 20, 2019, upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                    *VIA ELECTRONIC MAIL*
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Plaintiff*

Steven G. Hill, Esquire                          *VIA ELECTRONIC MAIL*
Vivek Ganti, Esquire
HILL, KERTSCHER & WARTON, LLP
3350 Riverwood Parkway, Suite 800
Atlanta, GA  30339
*Attorneys for Plaintiff*


                                    */s/ Brian P. Egan*
                                    _____
                                    Brian P. Egan (#6227)