**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| RAPHAEL THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.19-899-RGA-SRF |
| | ) | |
| TCT MOBILE, INC. and, | ) | |
| TCT MOBILE (US) INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Presently before the Court is Defendants' renewed motion pursuant to Federal Rule of

Civil Procedure 12(b)(6) to dismiss Plaintiff's action for patent infringement (the "Motion").

(D.I. 20)[1] Defendants argue that the asserted patent claims are ineligible under 35 U.S.C. § 101

because they are directed to an abstract idea. As explained below, the Court finds that the

asserted patent claims are directed to the abstract idea of screening communications and the

claims add no inventive concept that is significantly more than the abstract idea itself, and

instead merely use generically-described, conventional technology to implement the abstract

idea. Therefore, the Court recommends that the District Court GRANT the motion with

prejudice.

## I.      BACKGROUND

Plaintiff Raphael Thompson ("Plaintiff" or "Thompson") is an individual residing in

Georgia and is the named inventor on asserted United States Patent Nos. 8,806,053 ("the '053

patent") and 9,473,629 ("the '629 patent") (collectively, "the asserted patents" or "the patents-in-

suit"). (D.I. 18 at ¶¶ 1-2; *see also* D.I. 18, exs. A & B) Defendants TCT Mobile, Inc. and TCT

---

[1]      The briefing associated with Defendants' Motion is found at D.I. 21, D.I. 22, and
D.I. 23.

Mobile (US) Inc. (collectively, "TCT Mobile" or "Defendants") are Delaware corporations with their principal place of business in Irvine, California. (*Id.* at ¶¶ 3-4)

The '053 and '629 patents share a specification and are both entitled "COMMUNICATION DELIVERY FILTER FOR MOBILE DEVICE[.]" ('053 patent, Title; '629 patent, Title; D.I. 18 at ¶¶ 18, 20)[2] The asserted patents describe devices and methods for screening notifications when a "Nighttime Mode" is activated. ('053 patent, Title, Abstract, cols. 1:55-2:54 ("The object of the invention is a method for a Nighttime Mode for cellular phones."))

Plaintiff alleges that Defendants infringe "at least" claim 1 of the '053 patent and claims 11-13 of the '629 patent (collectively, "the asserted claims"). (D.I. 18 at ¶¶ 63, 74-75, 78) Those asserted claims recite:

> **1**. A method implemented within a mobile device for inhibiting the message notification of a particular message received at the mobile device, the method comprising the steps of:
>> receiving at least one exempt message characteristic, the at least one exempt message characteristic comprising information that identifies one or more telephone numbers as exempt message characteristics, the exempt message characteristics being received at the user interface of the mobile device wherein the mobile device includes the storage of a plurality of telephone numbers and the step of receiving information further comprises receiving a selection of one or more telephone numbers from the plurality of telephone numbers already stored within the mobile device;
>> enabling a message reception notification inhibitor in response to detecting certain user actuations at the user interface, the message reception notification inhibitor being implemented entirely within the mobile device, to be active such that message notifications for any messages received at the mobile device are by default inhibited;
>> while the message reception notification inhibitor is enabled:

---

[2]     Because the specifications are identical, the Court will only cite to the '053 patent unless otherwise specified.

2

receiving messages at the mobile device, the messages being directed to the mobile device and at least one such message comprising a voice call; and

the mobile device examining the received message to determine if the received message includes the exempt message characteristic;

the mobile device bypassing the message reception notification inhibitor and applying normal processing of the received message only if the exempt message characteristic is identified in the received message; and

as a default, inhibiting the message reception notification for the received message if the exempt message characteristic is absent and the message is a voice call and sending the voice call to voice mail; and

disabling the message reception notification inhibitor, implemented entirely within the mobile device such that normal processing of the received message is applied to all messages.

('053 patent, cols. 4:64-5:40)

11. A mobile device for processing received communications in one of a plurality of modes, the mobile device comprising:

a module, operating entirely within the mobile device, configured to enable a first mode of operation that, in response to receiving a communication initiation at the mobile device, operates by applying normal processing of the communication initiation such that the mobile device provides a user-indicator of such communication initiation reception and, configured to enable a second mode of operation that, in response to receiving a communication initiation at the mobile device, operates such that the mobile device as a default, inhibits the provision of the user-indicator for the communication initiation unless the communication initiation includes at least one user selectable exempt characteristic;

a user interface for detecting user interactions and based on the user interactions, interacting with the mobile device to selectively enable operation of the mobile device in the first mode in response to first user interactions and second mode of operation in response to second user interactions and to enable the selection of exempt characteristics, wherein the exempt characteristics comprise the identification of a potential communication originator and is selected from a

plurality of originator identifications stored within the mobile device.

('629 patent, cols. 6:48-7:8)

> **12**. The mobile device of claim **11**, wherein the mobile device is a cellular telephone including an address book with at least one entry in the address book including an exempt characteristic.

(*Id.*, col. 7:9-12)

> **13**. The mobile device of claim **11**, wherein the mobile device is a cellular telephone including a user interface to enable a user to identify potential communication originators stored within the cellular telephone as exempt characteristics.

(*Id.*, col. 7:13-17)

Plaintiff filed his original complaint for patent infringement on May 14, 2019, (D.I. 1), and filed a First Amended Complaint on August 6, 2019, (D.I. 9). Defendants filed a Motion to Dismiss the First Amended Complaint arguing the asserted claims are ineligible for patenting under 35 U.S.C. § 101 ("Section 101"). (D.I. 11; D.I. 12) Plaintiff filed a response brief to Defendants' first motion on September 3, 2019, (D.I. 14), and, on the same day, filed a Motion for Leave to File a Second Amended Complaint, (D.I. 15). The Court granted Plaintiff's Motion for Leave on September 12, 2019, (D.I. 17), and Plaintiff filed his Second Amended Complaint ("SAC") (the currently-operative complaint) that same day, (D.I. 18).

On September 26, 2019, Defendants filed a Renewed Motion to Dismiss seeking dismissal of the SAC, again arguing that the asserted claims are patent ineligible pursuant to Section 101. (D.I. 20; D.I. 21) Briefing was completed on October 17, 2019, (D.I. 23), and the Court heard oral argument on February 12, 2020, (D.I. 26 (hereinafter "Tr.")).

## II.    STANDARD OF REVIEW

### A.    Failure to State a Claim

Defendants move to dismiss the pending action pursuant to Rule 12(b)(6), which permits a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). According to Defendants, Plaintiff's SAC fails to state a claim because the asserted claims of the '053 and '629 patents are ineligible for patent protection under 35 U.S.C. § 101. Patent eligibility under 35 U.S.C. § 101 is a threshold test. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Therefore, "patent eligibility can be determined at the Rule 12(b)(6) stage . . . when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008). Dismissal under Rule 12(b)(6) is only appropriate if the complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). However, "a court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)).

## B. Patent-Eligible Subject Matter

Section 101 of the Patent Act provides that patentable subject matter extends to four broad categories: "Whoever invents or discovers any new and useful [1] process, [2] machine, [3] manufacture, or [4] composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court recognizes three exceptions to the subject matter eligibility requirements of [Section] 101: laws of nature, physical phenomena, and abstract ideas. *Alice Corp, Pty. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014). The purpose of these exceptions is to protect the "basic tools of scientific and technological work," *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012), which are "part of the storehouse of knowledge of all men . . . free to all men and reserved exclusively to none," *Bilski*, 561 U.S. at 602 (internal quotation marks and citations omitted).

The Supreme Court articulated a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217; *see also Mayo*, 566 U.S. at 77-78. At step one, the court must determine whether the claims are directed to one of the three patent-ineligible concepts. *Alice*, 573 U.S. at 217. If not, "the claims satisfy [Section] 101 and [the court] need not proceed to the second step." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018). If the claims are directed to a patent-ineligible concept, the court must proceed to the second step of identifying an "'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217-18 (quoting *Mayo*, 566 U.S. at 72-73).

At step one, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp, v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter."). However, "courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (internal quotation marks omitted). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

At step two, the court must "look to both the claim as a whole and the individual claim elements" to determine whether they "amount[ ] to significantly more than a patent upon the [ineligible concept] itself." *McRO*, 837 F.3d at 1312. "Simply appending conventional steps, specified at a high level of generality, [is] not enough to supply an inventive concept." *Alice*, 573 U.S. at 222 (internal quotation marks omitted). Instead, the claim elements must "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (citation and internal quotation marks omitted); *see also Mayo*, 566 U.S. at 73. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic

arrangement of known, conventional pieces." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

## III. DISCUSSION

In resolving Defendants' Motion, the Court will first discuss which claims will be specifically addressed herein as representative. Thereafter, it will analyze the relevant claims under both steps of the test for patent eligibility set out in *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), taking into account whether any factual disputes preclude granting Defendants' Motion.

### A. Claims at Issue

As a preliminary matter, the Court considers which claims of the '053 and '629 patents the Court must analyze to fully resolve the pending Motion. Defendants argue that "Claim 1 of the '053 Patent and Claim 11 of the '629 Patent are representative of the remaining claims of the Patents-in-Suit[.]" (D.I. 21 at 2 n.2) For his part, Plaintiff does not contest Defendants' assertion of representativeness. (D.I. 22; *see also* Tr. at 28-29 ("I don't take issue with the fact that claim 11 of the '629 patent is representative as it relates to the other two claims for purposes of this motion.")) In fact, Plaintiff's opposition only analyzes claim 1 of the '053 patent and claim 11 of the '629 patent, never mentioning claims 12 or 13 of the '629 patent or any specific limitations of those claims. (D.I. 22) Thus, for the purposes of considering the present Motion, the Court will treat claim 1 of the '053 patent and claim 11 of the '629 patent as representative. *See Berkheimer*, 881 F.3d at 1365 ("Courts may treat a claim as representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative.").

8

### B. *Alice* Step One

At step one, Defendants argue that "[t]he asserted claims of the Patents-in-Suit are directed to the abstract idea of screening communications." (D.I. 21 at 7 (emphasis omitted); *see also id.* at 1-2, 8-14) Plaintiff, in response, does not dispute that the concept of "screening communications" is an abstract idea. Instead, he makes a few different arguments about why, in his view, the claim is not "directed to" such an abstract idea—e.g., that Defendants' distillation of the asserted claims "oversimplifies the Patents-in-suit[.]" (D.I. 22 at 1; *id.* at 7 (arguing that Defendants' articulation is a "dramatic oversimplification"))

The Court finds that claim 1 of the '053 patent and claim 11 of the '629 patent are drawn to the idea of screening communications and that this idea is abstract—a "disembodied concept . . . untethered from any real-world application." *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1286 (Fed. Cir. 2013) (internal quotation marks and citation omitted), *aff'd*, 573 U.S. 208 (2014); *see also Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313-1314 (Fed. Cir. 2016) ("*Symantec*") (finding the challenged claims to be directed to the abstract idea of "filtering files/e-mail"); *RingCentral, Inc. v. Dialpad, Inc.*, 372 F. Supp. 3d 988, 999 (N.D. Cal. 2019) (finding the asserted claim, which recited a method for screening phone calls with "configuration parameters [that] include a plurality of sets of call handling rules for handling incoming calls" based on "different respective periods of time[,]" to be directed to the abstract idea of "routing telephone calls based on routing parameters, such as time of day, and allowing a user to modify those routing parameters") The '053 and '629 patents themselves provide significant indications that the asserted claims are in fact "directed to" this concept.

First, the specification broadly describes the invention as being directed to a "communication delivery filter for [a] mobile device[.]" ('053 patent, Title (capitalization

omitted); *see also id.*, Abstract (describing a "filtered mode" or a "'night-time' mode" used to prevent the mobile device "from providing normal message reception alert notifications"))  The patents explain that "[t]he object of the invention is a method for a Nighttime Mode for cellular phones," (*id.* at col. 1:59-60), wherein the "Nighttime Mode" is a selectable mode in which "the phone remains silent" except for notifications from certain numbers that have been marked "Nighttime Mode exempt[,]" (*id.*, cols. 1:57-2:8).

The shared specification further explains that "[t]he Nighttime mode is a completely new process for cellular phones, which provides a unique, smart, and novel solution to the problem discussed earlier[,]" (*id.*, col 2:65-67), where the problem described was "leav[ing] the [cell phone] user open to being disturbed or awaken[ed] by calls or messages received during the nighttime that are not important," and a "need for a method for a selectable Nighttime Mode that would stop notification of all incoming calls and messages, with the exception of those from a contact that have been predetermined as important (or Nighttime Mode exempt)[,]" (*id.*, col. 1:41-51).  (*See also* Tr. at 23 (discussing the "fairly digestible problem" of the "user who leaves his cell phone on at night is left open to being disturbed or awakened by calls or messages that are unimportant"))

Additionally, the sole figure in the patent (Fig. 1) is a flow diagram showing the process of screening communications based on enabling the filter and identifying whether the "communication includes exempt characteristic" (i.e., is from an exempted phone number).  (*Id.* at Fig. 1; *see also* Tr. at 26, (Plaintiff emphasizing Figure 1 as "the nighttime mode algorithm"), 30 (arguing the "language of claim 1 marries up to both figure 1[ and] the description of the algorithm and the narrative description of the algorithm that's found in columns 3 and 4 of the

patent"), 36 (Plaintiff's counsel pointing again to Figure 1))  This all provides an indication that the patent is directed to the idea of screening communications.

Second, the claim language itself shows that the invention is focused on screening communications.  The preamble to representative claim 1 of the '053 patent is broadly worded as a "method implemented within a mobile device for inhibiting the message notification of a particular message received at the mobile device[.]"  ('053 patent, col. 4:64-67); *see Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017) (noting that it was not error for the district court to cite "to the preamble in its review of whether the claims are directed to an abstract idea" where the court's inquiry was "centered on determining the 'focus' of the claims").  Likewise, the preamble to representative claim 11 of the '629 patent broadly recites a "mobile device for processing received communications in one of a plurality of modes," ('629 patent, col. 6:48-50), wherein one of the "modes" is "the mobile device as a default, inhibits the provision of the user-indicator for the communication initiation unless the communication initiation includes at least one user selectable exempt characteristic[,]"  (*id.*, col. 6:60-64).

The bodies of the representative claims also demonstrate they are directed to the idea of screening communications.  For example, claim 1 of the '053 patent describes "applying normal processing of the received message *only if* the exempt message characteristic is identified in the received message[,]" and recites functions ancillary to this core screening feature:  "receiving at least one exempt message characteristic . . . comprising information that identifies one or more telephone numbers" at a "user interface of the mobile device[,]" "enabling a message reception notification inhibitor[,]" and "disabling the message reception notification inhibitor[.]"  ('053 patent, col. 5:1-40 (emphasis added))  Likewise, the body of representative claim 11 of the '629

11

patent recites similar functionality.  ('629 patent, cols. 6:51-7:8 (describing a "first mode" with "normal processing" and a "second mode" that "inhibits provision of the user-indicator for the communication unless the communication initiation includes at least one user selectable exempt characteristics" (which "comprise the identification of a potential communication originator") and a "user interface" for "selectively enabl[ing] operation of the mobile device" either in the "first mode" or the "second mode"))  Thus, the "claimed advance" here is providing a mode of operation for a cellular phone which screens all communications except those from numbers previously selected as exempt, which shows that the focus of the claim is on screening communications.  *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 939 F.3d 1355, 1361 (Fed. Cir. 2019) ("To determine what the claims are 'directed to' at step one, we look to the 'focus of the claimed advance.'") (citing cases); *see also Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018); *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1149-50 (Fed. Cir. 2019).

Furthermore, the Court agrees with Defendants that the real-world analogy of an assistant screening calls for a CEO shows that the claims are directed to the abstract idea of screening communications, and not to an improvement in technology.  (D.I. 21 at 8-10; D.I. 23 at 1-2, 5; Tr. at 6-7, 23-24, 43); *see also Symantec*, 838 F.3d at 1314 n.5 (collecting Section 101 cases finding patents to be directed to abstract ideas that were "fundamental . . . practice[s]") (quoting *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 219 (2014)).  In this analogy, the assistant acts as the "message reception notification inhibitor" ('053 patent claim 1) or the "module" ('629 patent claim 11) preventing the CEO ("user" of the "mobile device") from receiving all notifications during a specified period of time except those from certain telephone numbers (e.g., a spouse) which the CEO has pre-selected (e.g., by telling the assistant).  (D.I. 21 at 8-9; D.I. 23

at 5; Tr. at 6-7)  The Court finds that this analogy closely aligns with the limitations of the representative claims, and thus demonstrates they are indeed directed to the abstract idea of screening communications.

Plaintiff responds that the analogy fails because the "receptionist or caller ID device must first be notified before the human or device can screen or filter the phone call," (D.I. 22 at 8); but Plaintiff confuses the analogy.  In Defendants' analogy, the CEO is analogous to the "user" of the mobile device (for whom message notifications are inhibited), and the assistant is analogous to the "message notification inhibiting functionality" ('053 patent claim 1) or the "module" ('629 patent claim 11).  It does not matter that the "receptionist . . . must be first notified" in the analogy because the same is true for the claims, which require the inhibitor to first "examin[e] the received message" to determine if screening is appropriate.  ('053 patent, col. 5:22-32; '629 patent, col. 6:57-62 (claim 11 reciting "receiving a communication initiation at the mobile device" before "inhibit[ing] the provision of the user-indicator for the communication"); *see also id.* at Fig. 1 (showing the step of "receive communication" above the step of determining "if communication includes exempt characteristic" above the actual filtering))[3]

---

[3]    At the hearing, Plaintiff added a new argument as to why Defendants' analogy breaks down.  According to Plaintiff, Defendants' analogy "ends . . . at the end of the business day, which is really where the problem of this technology begins is after you get home and you're at nighttime, and you don't have that receptionist to screen your calls."  (Tr. at 23-24)  This argument fails for a few reasons.

First, because it was not raised in the briefs, the argument is waived.  *See Watkins v. Int'l Union, Sec., Police & Fire Professionals of Am.*, C.A. No. 15-444-LPS, 2016 WL 1166323, at *4 n.4 (D. Del. Mar. 23, 2016) (finding argument raised for the first time at the oral hearing to be waived) (citing cases).  Second, as Defendants correctly point out, the claims are not restricted to nighttime (or daytime) usage.  (Tr. at 43; *see* '629 patent, cols. 6:48-7:8; '053 patent, cols. 4:64-5:40)

Finally, Plaintiff's argument actually shows that the claims *are* directed to the abstract idea embodied by Defendants' analogy.  Put differently, according to Plaintiff, the problem

To rebut Defendants' step one argument, Plaintiff argues that the claims recite "non-abstract subject matter involving mobile devices and methods of improving a mobile device by a unique interface for entering a default mode to inhibit message notification selectively." (D.I. 22 at 7) Plaintiff emphasizes the following features:

- embedding the claimed functionality entirely within the mobile device,
- the interface,
- separate concrete modes of operation,
- the counterintuitive default mode of inhibiting communication notifications, and
- the ability to change default behavior of the mobile device.

(*Id.* at 7-9) As discussed below, however, the shared specification gives no indication that the features emphasized by Plaintiff are the focus of the challenged claims or that they are improvements in technology.[4]

First, regarding "embedding the claimed functionality entirely within the mobile device," (D.I. 22 at 7), although this appears to be a required feature of the representative claims, ('053 patent, col. 5:15-16 ("the message reception notification inhibitor being implemented entirely within the mobile device"); '629 patent, col. 6:51 ("a module, operating entirely within the mobile device")), Plaintiff provides no reason why this is the focus of the claims or an improvement in technology and cites no support for that proposition in the specification, the claims, or the SAC, (D.I. 22 at 7-8). Thus, the Court rejects this unsupported argument.

solved by the invention could have been solved by the receptionist except for the fact that "you're at nighttime" at "home" and "you don't have that receptionist to screen your calls." (Tr. at 23)

[4] Notably, Plaintiff's step one argument contains no citations to the asserted patents or the SAC. (*See* D.I. 22 at 6-10)

Second, regarding the allegedly "unique interface," (*id.* at 7), this feature is described in generic and functional terms in the representative claims and is not emphasized in the shared specification in a way that would indicate it is the "focus of the claims." In the challenged claims, the user interface accomplishes two functions, both of which are ancillary to the primary function of screening calls: (1) enabling communication screening[5] and (2) selecting telephone numbers exempted from screening.[6] ('053 patent, cols. 4:64-5:40; '629 patent, cols. 6:48-7:8) The representative claims, however, provide no specific restrictions as to how these functions are accomplished. The claims do not specify how the exempt telephone numbers are "selected" or how the inhibitor mode is "enabl[ed]" other than "in response to detecting certain user actuations[,]" which is a wholly generic description. ('053 patent, cols. 4:64-5:40; *see also* '629 patent, cols. 6:48-7:8 (claim 11 reciting "a user interface for detecting user interactions and based on the user interactions, interacting with the mobile device to selectively enable operation of the mobile device in the first mode in response to first user interactions"))

Therefore, these recited functions are not the type of "specific improvement[s] over prior systems, resulting in an improved user interface for electronic devices" that courts have previously found sufficient to pass step one of *Alice*. *See Core Wireless*, 880 F.3d at 1363; (*see*

---

[5] In claim 1 of the '053 patent, the user interface "enabl[es] a message reception notification inhibitor in response to detecting certain user actuations[.]" ('053 patent, col. 5:13-19) Claim 11 of the '629 patent recites "selectively enabl[ing] operation of the mobile device" in a "first mode" or a "second mode" based on certain "user interactions" "detect[ed]" at the user interface[.]" ('629 patent, cols. 6:65-7:4)

[6] Claim 1 of the '053 patent recites that the mobile device "receive[s]" "one or more telephone numbers as exempt message characteristics," which involves the "selection of one or more telephone numbers from the plurality of telephone numbers already stored within the mobile device." ('053 patent, col. 5:1-11) Claim 11 of the '629 patent recites "identification of a potential communication originator" that is "selected from a plurality of originator identifications stored within the mobile device." ('629 patent, cols. 6:65-7:8)

15

D.I. 22 at 9 (citing *Core Wireless*, 880 F.3d at 1363 and *Trading Techs. Int'l, Inc. v. CQG, INC.*, 675 F. App'x 1001, 1004 (Fed. Cir. 2017))).  In *Core Wireless*, the claims at issue recited a "specific manner of displaying a limited set of information to a user," and the Federal Circuit emphasized the "particular manner" in which the information was "summariz[ed] and present[ed]" and the "restrain[t]s [on] the type of data that can be displayed in the summary window."  *Id.*  Likewise, the challenged claims in *Trading Technologies* were found to "require a specific, structured graphical user interface paired with a prescribed functionality directly related to the graphical user interface's structure[.]"  675 F. App'x at 1004.  Here, by contrast, no such "particular manner" or "structure" of the user interface is described, and instead the user interface is defined only generically by function.

Further showing that the user interface is not the focus of the claims, the "problem" discussed in the specification—which the patent purports to solve—is not an inefficient or non-ideal user interface; it is instead the problem of "disturb[ing]" the user with unwanted notifications.  ('053 patent, col. 1:15-56)  Indeed, the "background of the invention" never mentions user interfaces or problems with prior art user interfaces.  (*Id.*, col. 1:13-51); *see also Symantec*, 838 F.3d at 1318 (looking to the "background of the invention" to determine whether the challenged claims were directed to abstract ideas).  In fact, nowhere in the entire specification does the patent discuss problems with prior art user interfaces.  This provides another point of distinction from *Core Wireless* and *Trading Technologies*, cited by Plaintiff, because those cases recognized that the focus of the claims was on improved "user interfaces," in part due to the specifications' description of challenges of prior art user interfaces—challenges that were overcome by the claims.  *See Core Wireless*, 880 F.3d at 1363 ("confirm[ing] that [the challenged] claims disclose an improved user interface" by looking at the "deficits" of the prior

art described in the specification); *Trading Technologies*, 675 F. App'x. at 1004 (finding the claimed user interface "resolves a specifically identified problem in the prior state of the art"). This further shows that although the representative claims recite a "user interface," they are not "focused on" or "directed to" this feature.

Finally, regarding Plaintiff's argument about the "separate concrete modes of operation, the counterintuitive default mode of inhibiting communication notifications, and the ability to change default behavior of the mobile device," the Court finds these to be merely restatements of the abstract idea—screening communications. The "separate . . . modes" are: (1) "normal processing" and (2) screening. ('629 patent, col. 6:51-64) The "default mode of inhibiting communications" likewise is the idea of screening communications. And finally, the "ability to change default behavior of the mobile device" is simply changing the mobile device to screen communications. Thus, these rationales fail to show the claims are directed to anything more than the abstract idea of screening communications.

For all of these reasons, the Court recommends that the challenged claims are directed to the abstract idea of screening communications at step one. Thus, the Court proceeds to step two.

## C.     *Alice* **Step Two**

At step two, the Court must ask if the claim's elements, either considered individually or taken together, recite an "inventive concept" that amounts to significantly more than the abstract idea itself. *Alice*, 573 U.S. at 217 (internal quotation marks and citation omitted). And in doing so, the Court must be mindful that if a claim's only alleged inventive concept involves the application of the abstract idea using "conventional and well-understood techniques[,]" then the claim has not been transformed into a patent-eligible application of an abstract idea. *Cellspin*

*Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019) (internal quotation marks and citation omitted).

Defendants argue that the claims contain no inventive features that would otherwise save them from ineligibility at step two. (D.I. 21 at 14-16; D.I. 23 at 7-10) They assert that the representative claims simply disclose the abstract idea along with a generic "mobile device" and "user interface," and that the claim is written in broad, functional language, failing to describe how its features are to be implemented. (D.I. 21 at 14-16) Plaintiff disputes Defendants' characterization "that the claims pertain to 'purely conventional components,'" (D.I. 22 at 12 (quoting D.I. 21 at 14)), and instead emphasizes his allegations in the SAC of unconventionality and inventiveness of the "default inhibitor mode" and the "claimed interface of the Patents-in-Suit." (D.I. 22 at 10-13) The Court will discuss each of these aspects of the challenged claims in turn, below.

Plaintiff's first argument focuses on his allegations in the SAC that the "default inhibitor mode" is a departure from the conventional practice of "mak[ing] the mobile devices a tool for providing alerts and improving the flow of communication to other individuals." (*Id.* at 10-13; *see also* Tr. at 28-33) Plaintiff argues this unconventionality is demonstrated by the fact that the "major players in the mobile device industry later adopted" this feature, citing certain articles and patents included as exhibits to the SAC. (D.I. 22 at 11 (citing D.I. 18 at ¶¶ 31-37, 45; *id.*, ex. I); *see also* D.I. 18, exs. C-E, K, L)) The problem with Plaintiff's argument is that it amounts to an assertion that the abstract idea itself (screening communications) is an unconventional inventive concept. (*See* D.I. 23 at 9) However, the Federal Circuit has held that "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention significantly more than that ineligible concept." *BSG Tech*

*LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (internal quotation marks and citation omitted) (affirming summary judgment of patent ineligibility); *see also ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 774 (Fed. Cir. 2019) (affirming dismissal under Rule 12(b)(6) due to patent ineligibility for similar reasons).  Thus, Plaintiff's argument that screening communications is a "unique, smart, and novel solution[,]" that was later adopted by other players in the industry, (D.I. 22 at 10-11 (emphasis omitted) (quoting '053 patent, col. 1:45-51)), is legally insufficient to provide an inventive concept to save the claims at step two.

Second, Plaintiff argues that "[t]he claimed interfaces of the Patents-in-Suit introduce a new, inventive interface in the field of computing, one that was not appreciated by the mobile device industry until after the time of the invention."  (D.I. 22 at 11)  Defendants respond that the "user interface . . . is an admittedly conventional feature" and that a generically described user interface "is not inventive," as demonstrated by Section 101 rulings by other courts.  (D.I. 21 at 15, 20 (citing *RingCentral, Inc. v. Dialpad, Inc.*, 372 F. Supp. 3d 988, 1000 (N.D. Cal. 2019); *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324–25 (Fed. Cir. 2016); *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1373–74 (Fed. Cir. 2017)); *see also* D.I. 23 at 10))

The Court finds that the "user interface" of the claims is described generically with only a very high-level functional description, and thus fails to provide an inventive concept for the reasons described in *RingCentral* and *Mortgage Grader*.  *RingCentral*, 372 F. Supp. 3d at 1000 (finding claim directed to "routing telephone calls based on routing parameters, such as time of day, and allowing a user to modify those routing parameters" to be ineligible even though it also recited a "user interface"); *Mortg. Grader*, 811 F.3d at 1324–25 (finding adding a generic "interface" limitation insufficient to render eligible patent claims directed to the abstract idea of

anonymous loan shopping).  And although the Federal Circuit in *Cellspin*, held that "plausible

and specific factual allegations [in the complaint] that aspects of the claims are inventive are

sufficient" so long as they are not "wholly divorced from the claims or the specification," 927

F.3d at 1317, as discussed below, here there are no such "plausible and specific" allegations

regarding the user interface, and the portions of the SAC actually discussing the user interface

are untethered from the claims or the specification.

Plaintiff points to nothing in the asserted patents themselves for this user interface

argument, and instead points exclusively to the SAC.  (D.I. 22 at 11 (citing D.I. 18 at ¶¶ 31-45))

And these cited portions of the SAC never point to the asserted patents.  (D.I. 18 at ¶¶ 31-45)[7]  In

the relevant paragraphs, the SAC attempts to distinguish the "interfaces of the Patents-in-Suit"

from the "simplistic volume buttons" of prior art devices.  (*Id.* at ¶¶ 42-44)  Yet, these portions

of the SAC never actually describe how the claimed interface differs from those conventional

interfaces other than by tying the claimed user interface to the abstract idea of screening

communications.  (*Id.* at ¶¶ 43-44 (describing a "routine and conventional" user interface that

included "nothing more than a volume button or silent setting" and then describing as an

"improvement[] in the computer technology" the "interfaces of the Patents-in-Suit *that provide*

*the Default Inhibitor Mode*") (emphasis added); *see also id.* at ¶ 41 (alleging a "new and

improved user interface of the mobile device *for entering a default mode of inhibiting message*

*notifications or inhibiting the provision of a user-indicator for communication initiation*, among

---

[7]    Indeed, only paragraphs 41 through 44 of the portion cited by Plaintiff are
regarding the "interfaces of the Patents-in-Suit[.]"  (*Id.* at ¶¶ 41-44)  The remainder is discussing
the function of screening communications, (*id.* at ¶¶ 31-40, 45 (discussing "[t]he concept of
inhibiting message notifications/indications as a default")), which, as described above, cannot
provide the inventive concept because it is the abstract idea itself.

other things") (emphasis added))  Apart from this description touting the abstract idea, the relevant portion of the SAC only contains boilerplate allegations that the interface is "new and improved[,]" "new [and] inventive[,]" an "improvement[] in computer technology[,]" or "non-abstract, concrete implementations of the concept of filtering messages."  (*Id.* at ¶¶ 41-44)  But such conclusory descriptions are not "plausible and specific factual allegations" that the user interface is inventive sufficient to survive step two.  *See Cellspin*, 927 F.3d at 1317.

Thus, the Court recommends that the representative claims contain no inventive concepts that would save the claims at *Alice*'s step two.

**D.      Leave to Amend**

Defendants request that the SAC be dismissed with prejudice.  (D.I. 21 at 3, 20; D.I. 23 at 3)  Plaintiff, in his briefing, did not request leave to amend his SAC or ask that the motion be granted without prejudice in the alternative to his arguments that the asserted claims and the SAC survive.  (*See* D.I. 22)  At the hearing, however, Plaintiff briefly requested leave to amend. (Tr. at 34)

The Court recommends that dismissal with prejudice is appropriate here.  Plaintiff has already amended his complaint twice, and the second time was an attempt to resolve the same patentability issues in response to the first motion to dismiss based on Section 101.  (*See* D.I. 9 (First Amended Complaint); D.I. 11 (First Motion to Dismiss based on Section 101); D.I. 18 (Second Amended Complaint))  Tellingly, unlike his response to the first motion to dismiss, this time Plaintiff did not file a separate motion requesting leave to amend his complaint including the material he seeks to add.  (D.I. 15 (Motion for Leave to File Second Amended Complaint filed the same day as Plaintiff's Answering Brief); *see also id.* at exs. B (proposed SAC), C (redline of changes between the FAC and the proposed SAC))

21

Furthermore, the material described at the hearing that Plaintiff seeks to add is more allegations that "the message reception notification inhibitor or the nighttime mode communication inhibition module was not well-understood, routine, or conventional[.]" (Tr. at 34) As described above, however, even if this is accepted as true, this allegation is insufficient to save the claims as a legal matter because it is simply asserting the abstract idea itself is unconventional. Thus, the Court recommends that granting further leave to amend regarding this topic would be futile. *Cf. ChargePoint, Inc. v. SemaConnect*, Inc., 920 F.3d 759, 775 (Fed. Cir. 2019) (affirming prejudicial dismissal of complaint on a Section 101 motion to dismiss where the plaintiff "ha[d] not identified any alleged facts that could be pleaded that would cure the deficiencies in the complaint"); *Citrix Sys., Inc. v. Avi Networks, Inc.*, 363 F. Supp. 3d 511, 525 (D. Del. 2019) (granting Section 101 motion for dismissal with prejudice due to futility).

## IV.     CONCLUSION

For the reasons discussed above, the Court recommends that the District Court GRANT Defendants' Motion to Dismiss with prejudice.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:  March 31, 2020

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE